Filed 3/12/24  O.E. v. St. Mary's School CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| O.E., a Minor, etc., et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>ST. MARY'S SCHOOL et al.,<br><br>    Defendants and Appellants. | G062061<br><br>(Super. Ct. No. 30-2022-01257324)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed.

Soltman, Levitt, Flaherty & Wattles and Joshua N. Willis for Defendants and Appellants.

RMO, David G. Greco, Phillip J. Szachowicz and Kristen A. Friedman for Plaintiffs and Respondents.

Defendants St. Mary's School, Sharon Taylor, Doug Patterson, and Rebecca Zipprich (collectively referred to in the singular as St. Mary's) appeal from an order denying a special motion to strike under the anti-SLAPP statute. (Code Civ. Proc., § 425.16; all further statutory references are to this code.)[1] St. Mary's argues: (1) it engaged in protected activity under the anti-SLAPP statute by disclosing plaintiff O.E.'s expulsion from St. Mary's School to a private high school; and (2) plaintiffs O.E. and O.E.'s mother cannot show a probability of prevailing on the merits on their six causes of action. St. Mary's also challenges the trial court's evidentiary rulings.

We affirm. We find St. Mary's forfeited certain protected activity arguments under step one of the anti-SLAPP analysis. We also conclude St. Mary's failed to demonstrate how its disclosure to the private high school was protected activity under section 425.16, subdivision (e)(4). As St. Mary's did not carry its burden at step one, we need not move to step two of the anti-SLAPP analysis or consider the trial court's evidentiary rulings that go to the merits of the case.

FACTUAL AND PROCEDURAL BACKGROUND

O.E. was an eighth-grade student at St. Mary's School, a private school. By enrolling at St. Mary's School, O.E. agreed in an enrollment contract to abide by the rules and policies in the St. Mary's School's Family Handbook, which provided expulsions were "reportable to prospective schools." (Italics omitted.)

In March 2022, O.E. shared a collection of rap lyrics, stored in a mobile phone application, with a student. O.E. authored at least some of the lyrics. The rap contained racist, sexist, sexual, and violent lyrics, and named certain students attending St. Mary's School. Another student reported O.E. to the school administration for having

---

[1] The Legislature enacted the anti-SLAPP statute "to combat 'a disturbing increase' in strategic lawsuits against public participation (SLAPPs) . . . ." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1242).)

inappropriate content on O.E.'s phone. The school administration confronted O.E. regarding the rap lyrics and expelled O.E. from St. Mary's School.

Soon after, St. Mary's notified a private high school regarding O.E.'s expulsion from St. Mary's School. St. Mary's School had previously written a recommendation on behalf of O.E. to attend the private high school and this private high school had accepted O.E. as a student. After the notification, the private high school rescinded O.E.'s acceptance.

O.E. and O.E.'s mother filed a complaint against St. Mary's, alleging six causes of action: (1) public disclosure of private facts; (2) invasion of privacy under article I, section 1 of the California Constitution; (3) negligent hiring, retention, training, and/or supervision; (4) negligence; (5) intentional infliction of emotional distress; and (6) tortious and intentional interference with contractual relations. The complaint was based not only on St. Mary's disclosure of O.E.'s expulsion to the private high school, but also other disclosures to the eighth-grade student body (approximately 80 students) during an assembly, parents of eighth-grade students, a community organization of which O.E. was a member, and members of that community organization.

St. Mary's moved to strike the entire complaint under the anti-SLAPP statute. In its memorandum of points and authorities, St. Mary's asserted in one of the headings that its conduct was protected activity under section 425.16. But its argument focused not on its own conduct. It emphasized how O.E.'s rap lyrics threatened other students, posing a safety issue, and therefore was a matter of public interest. St. Mary's also argued St. Mary's School's internal investigation was protected activity because of the expulsion. It contended plaintiffs could not demonstrate a probability of prevailing on the merits.

O.E. and O.E.'s mother opposed the motion. They contended St. Mary's did not engage in protected activity because: (1) St. Mary's did not address the conduct on which plaintiffs based the causes of action; (2) student disciplinary records were

3

confidential and not a matter of public interest; and (3) any authorities concerning government conduct were irrelevant, because St. Mary's School is a private school. O.E. and O.E.'s mother argued they showed a probability of prevailing on their claims.

In reply to the opposition, St. Mary's argued, because the rap lyrics referenced St. Mary's School students, these students and their parents possessed a "'public interest'" regarding O.E.'s discipline. It also asserted St. Mary's notification to the private high school concerning O.E.'s expulsion was protected activity.

The trial court denied St. Mary's anti-SLAPP motion because St. Mary's did not show it engaged in protected activity under section 425.16, subdivision (e)(4). It also overruled St. Mary's evidentiary objections. St. Mary's timely appealed the order denying the anti-SLAPP motion.

## DISCUSSION

The anti-SLAPP statute aims to shield defendants from "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) To mitigate such risks, "the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1)." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

Courts evaluate anti-SLAPP motions through a two-step process. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) First, "the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from'

4

protected activity in which the defendant has engaged." (*Park v. Bd. of Trustees of Calif. State Univ.* (2017) 2 Cal.5th 1057, 1061 (*Park*), quoting § 425.16, subd. (b)(1); see § 425.16, subd. (e) [defining protected activity].) Second, if the defendant satisfies the first step, the plaintiff must show "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The plaintiff must establish the claim has "at least 'minimal merit.'" (*Park*, *supra*, 2 Cal.5th at p. 1061.)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park*, *supra*, 2 Cal.5th at p. 1067.) "'"Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim."'" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

I.

ST. MARY'S FORFEITED CERTAIN ANTI-SLAPP ARGUMENTS

O.E. and O.E.'s mother argue St. Mary's waived certain arguments under step one of the anti-SLAPP analysis, including any arguments concerning St. Mary's disclosure of O.E.'s expulsion to the eighth-grade class during an assembly, its disclosure to parents of eighth-grade students, and its "conduct that allowed the word to spread through the community." We agree and conclude St. Mary's forfeited these arguments.

"Generally, issues not raised in the trial court cannot be raised for the first time on appeal," and we deem them forfeited. (*Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44.) "Although appellate courts have discretion to consider an issue in the first instance if it raises a question of law on undisputed facts, our Supreme Court has cautioned that such discretion should be exercised rarely and only in cases presenting an important legal issue." (*Id.* at pp. 44–45.)

"'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' [Citation.] Alternatively stated, '[w]here a point is merely asserted by [appellant] without

5

any [substantive] argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion.' [Citation.] 'Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived.'" (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418.)

"Although we exercise our discretion to consider arguments for which we can discern a legal or factual basis in the briefs, there are many instances when no such basis is apparent. 'We are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise.'" (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

In the trial court, St. Mary's failed to provide any substantive legal analysis of its alleged disclosures of O.E.'s expulsion to third parties, except its disclosure to the private high school, under the first step of the anti-SLAPP inquiry. It also failed to do so on appeal. In its opening brief, St. Mary's argues the anti-SLAPP statute "protects Appellants' disclosure of OE's expulsion to [the private high school] since it involves a matter of grave public interest." Immediately thereafter, in a heading, St. Mary's asserts, "Appellants' Conduct In This Case Constitutes Constitutionally Protected Activity Under Section 425.16(e)(4)." Under this heading, St. Mary's analyzes only the disclosure to the private high school; it does not identify any other alleged conduct that could constitute protected activity. (See Cal. Rules of Court, rule 8.204(a)(1)(B) ["State each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"].) Instead, it refers to "a number of parents in the St. Mary's [School] community [having] a significant interest in [O.E.'s] expulsion as other students were referenced in his rap song such that those other students and their parents all had a 'public interest' in the nature of [O.E.'s] discipline." Without more, we are left to speculate as to what this conduct may be and how it may be protected under the anti-SLAPP statute.

6

St. Mary's reply brief does not provide any clarification. Its introduction emphasizes the disclosures to the private high school and the eighth-grade class are at issue. But St. Mary's substantive legal arguments concern only its disclosure to the private high school. No other conduct is discussed.

St. Mary's failure to provide any substantive legal arguments on these issues in the trial court and on appeal may be explained by its strategy of denying it "disclosed O.E.'s expulsion to anyone other than" the private high school.[2] But, in the first step of an anti-SLAPP motion, "[t]he moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue.'" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

Therefore, we conclude St. Mary's has forfeited its arguments under step one of the anti-SLAPP analysis regarding its alleged conduct, except its disclosure of O.E.'s expulsion to the private high school. We discuss the disclosure to the private high school below.

---

[2] Strangely, St. Mary's submitted a declaration of a school administrator suggesting St. Mary's disclosed the expulsion to individuals other than the private high school. The school administrator stated, "Following the expulsion of [O.E.] from St. Mary's [School], neither myself nor any representative of St. Mary's [School] ever used [O.E.'s] full name when communicating with other students or parents of [St. Mary's] School and/or third parties regarding his expulsion, with the exception of notifying [the private high school] of [O.E.'s] expulsion, which is expressly permitted under the relevant provisions of the St. Mary's [School's] Family Handbook." "This is a 'negative pregnant,' i.e., 'a denial of the literal truth of the total statement, but not of its substance.'" (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1021.) By denying using O.E.'s full name, the school administrator left open the possibility she disclosed the expulsion to others using O.E.'s first or last name.

## II.

### THE DISCLOSURE TO THE PRIVATE HIGH SCHOOL WAS NOT PROTECTED ACTIVITY

At step one, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) To carry its burden at step one, the moving defendant must establish "that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact *arise* from that conduct." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620 (*Rand Resources*).) "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.)

The four categories of protected activity "describe conduct '"in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue."'" (*Rand Resources*, *supra*, 6 Cal.5th at p. 620, quoting § 425.16, subd. (e).) Only one category is relevant here, the so-called catchall provision: section 425.16, subdivision (e)(4), protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The catchall provision "calls for a two-part analysis." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*).) First, we examine the "content of the speech" to decide what "'issue of public interest' the speech in question implicates." (*Ibid.*) The first part of the analysis "is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1253 (*Geiser*).)

8

Second, we look at the context of the speech—"we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn*, *supra*, 7 Cal.5th at pp. 149–150.) This analysis includes considering the "audience, speaker, and purpose" of the statement. (*Id.* at p. 152.) "'[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.'" (*Id.* at p. 150.)

In determining what is an "issue of public interest" (§ 425.16, subd. (e)(4)), courts have considered various factors, including "whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' [citation]; and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' [citation], or 'affect[ed] a community in a manner similar to that of a governmental entity.'" (*FilmOn*, *supra*, 7 Cal.5th at pp. 145–146.) The catchall provision "governs even private communications, so long as they concern a public issue." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 897.)

Here, the content of the communication to the private high school was O.E.'s expulsion from St. Mary's School. In a declaration, a school administrator states, "Consistent with the St. Mary's [School's] Family Handbook, O.E.'s expulsion was communicated to [the private high school], to which St. Mary's [School] had previously written a recommendation on behalf of O.E. In particular, the St. Mary's [School's] Family Handbook provides that expulsions are reportable offenses." That communication implicated only O.E.'s expulsion, not the underlying reasons for the expulsion.[3]

---

[3] The complaint states a school administrator informed O.E. she "intended . . . to disclose the nature of O.E.'s discipline and expulsion" to the private high school. Nowhere does the record show whether the school administrator disclosed the misconduct that resulted in expulsion.

And O.E.'s expulsion was not an issue of public interest. O.E., a minor, was not in the public eye. Admittedly, St. Mary's other alleged disclosures to approximately 80 students, parents, and a community organization where O.E. volunteered may have brought more publicity to O.E. But "'"a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest."'" (*Rand Resources*, *supra*, 6 Cal.5th at p. 621.) O.E.'s expulsion did not affect the public beyond the direct participants: it impacted only O.E., O.E.'s family and friends, some classmates and their parents, teachers, school administrators, and O.E.'s extracurricular activities.

St. Mary's asserts its disclosure to the private high school implicated various issues of public interest, including school safety and school governance. St. Mary's may have believed its notification to the private high school served to protect those students identified in the rap lyrics who may later attend the private high school. But its communication to the private high school did not signal any of these concerns. (See *Geiser*, *supra*, 13 Cal.5th at p. 1254 ["[T]he movant's beliefs, motivations, or characterizations may be relevant and, if objectively reasonable, will inform the analysis. But they are not themselves dispositive and, if not objectively reasonable, will not carry weight"].) St. Mary's informed the private high school of only the expulsion; no other details were provided.

Significantly, the communication here "did not seek public discussion of anything." (*Woodhill Ventures, LLC v. Yang* (2021) 68 Cal.App.5th 624, 632.) Its purpose was to notify the private high school regarding O.E.'s expulsion, to effectuate the policy outlined in the St. Mary's School's Family Handbook, and to protect the reputation of St. Mary's School given it had recommended O.E. to the private high school. The absence of any mention of the nature of the misconduct in the communication implies the disclosure of that misconduct was not the primary goal of the communication to the private high school.

10

We find St. Mary's did not carry its burden of showing the challenged conduct arose from protected activity in which it engaged. We therefore need not address O.E.'s likelihood of prevailing on the merits and the trial court's evidentiary rulings.[4]

In sum, because St. Mary's trial court arguments and appellate briefs provided only substantive argument that it engaged in protected conduct by making the disclosure to the private high school, St. Mary's has forfeited any contention it engaged in any other protected conduct. As for that disclosure, St. Mary's failed to show the disclosure rose to the level of protected conduct for the reasons we have explained.

We emphasize the narrow scope of our holding which is limited to the record and briefing before us. Nothing in our opinion limits the ability of schools to properly disclose student discipline information to other schools, and we do not reach the other disclosures at all because they were not argued in the trial court or on appeal. We express no opinion on the ultimate merits of the lawsuit.

---

[4] The parties devote a significant portion of their briefs to federal preemption and California Education Code sections, because the trial court denied the anti-SLAPP motion on the basis of federal preemption. In its preemption analysis, the trial court relied solely on *Rim of the World Unified School District v. Superior Court* (2002) 104 Cal.App.4th 1393 (*Rim of the World*). But there are two main problems with the trial court's reliance on *Rim of the World*. First, as O.E. and O.E.'s mother recognize in briefing the issue, the state law at issue in *Rim of the World*, Education Code section 48918, subdivision (k), applies only to public schools, not private schools. Second, as St. Mary's argues in its brief, the federal law at issue in *Rim of the World*, the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g), does not apply to St. Mary's School. FERPA applies to educational agencies or institutions that receive funding from programs administered by the United States Department of Education. (20 U.S.C. § 1232g(b)(1); *id.* § 1221(c)(1) [defining "applicable program"].) On this record, St. Mary's School has not received any federal funding from the United States Department of Education. Therefore, because the state law and federal law in *Rim of the World* do not apply here, we need not consider the preemption issue in disposing of the instant case.

11

DISPOSITION

The order is affirmed.  Respondents are entitled to costs on appeal.


MOTOIKE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


SANCHEZ, J.